UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHENOL CLAUDE,                           :
     Plaintiff,                        :        CIVIL ACTION NO.
                                       :        3:13-cv-00535 (VLB)
v.                                       :
                                       :
WELLS FARGO HOME MORTGAGE, et al.        :        August 14, 2014
     Defendants.                        :

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS [Dkt. 27]**

I.     **Introduction**

      The *pro se* Plaintiff, Phenol Claude, a Connecticut resident, brings this action against Wells Fargo Home Mortgage, Wells Fargo Bank, N.A. (collectively "Wells Fargo"), and all related insurers and fiduciary bondholders, and unnamed John Doe 1 and Jane Doe 1.  In his complaint, the Plaintiff asserts fifteen counts for: fraud (Count I); mail fraud (Count II); unfair debt collection (Count III); civil conspiracy (Count IV); violations of RICO, 18 U.S.C. § 1961, *et seq.* (Count V); statutory theft and conversion of funds (Count VI); violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("ECOA"), violations of Sections 107 and 128 of the Truth in Lending Act, 15 U.S.C. §§ 1606 and 1638 ("TILA"), and Sections 226.18(e), (g), and (h) and 226.22 of Regulation Z, 12 C.F.R. Part 226 ("Reg. Z") (Count VII); malicious abuse of process (Count VIII); intentional infliction of emotional distress (Count IX); trespass (Count X); failure to provide accurate TILA disclosures in the Real Estate Settlement Procedures Act, 12

1

U.S.C. § 2605, *et seq.* ("RESPA") (Count XI); violations of the disclosure requirements in the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA") (Count XII); predatory lending practice, in violation of ECOA, Connecticut TILA, TILA and Reg. Z, and RESPA (Count XIII); escrow shortage disclosure in violation of RESPA, 15 U.S.C. § 1691, *et seq.* 12 U.S.C. § 2605(e)(k), TILA §§ 1606 and 1638, and Reg. Z § 226.18(e), (g), and (h) and 226.22 (Count XIV); and constitutional rights violations pursuant to 42 U.S.C. §1981(a), 1983, 1985, 2000d, *et seq.*, and the Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA") (Count XV).  The Defendants moved to dismiss this complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted and for failure to plead with the requisite specificity of Fed. R. Civ. P. 9(b).

For the reasons that follow, the motion is GRANTED in part and DENIED in part.

II.    Background

The following facts and allegations are taken from the Plaintiff's First Amended Complaint, and these facts and allegations are deemed to be true for purposes of this motion.  [Dkt. 10, Complaint].  The Plaintiff is a citizen of Connecticut, residing at 43 Tarragon Drive, East Hampton, Connecticut.  [*Id.* at ¶ 1].  The Defendant Wells Fargo Home Mortgage is headquartered in San Francisco California and is a California corporation licensed to do business in

Connecticut.[1]  [*Id.* at ¶ 2].  As highlighted by the Defendants, Wells Fargo merged

with Wells Fargo Bank, N.A. in May 2004, with the sole surviving entity being

Wells Fargo Bank, N.A.  Presently, Wells Fargo Home Mortgage is a division of

Wells Fargo Bank, N.A.  The Complaint, therefore, proceeds against Wells Fargo

Bank, N.A. ("Wells Fargo").  [Dkt. 28, Defendants' Memorandum of Law in Support

of Motion to Dismiss, p. 2 n.1].

On or around September 5, 2012, the Plaintiff received a letter from Wells

Fargo regarding the property located at 43 Tarragon Drive in East Hampton,

asserting that an escrow shortage balance needed to be remedied.  [Dkt. 10, ¶ 5].

In essence, Claude's mortgage required him to maintain an escrow account with

funds sufficient for the bank to pay Claude's real estate taxes and homeowner's

insurance.  The September letter informed Claude that his taxes and/or

homeowner's insurance premium had increased, rendering his tax and insurance

escrow deficient.  Wells Fargo gave the Plaintiff two options for remedying this

deficit.  He could either pay the balance in a lump sum payment before November

1, 2012, and the monthly mortgage payment would be reduced by a specific

amount listed in the notice, or pay the deficiency over 36 months.  Under the

latter option, Claude's monthly mortgage payment would be increased by the

---

[1] Even though the Plaintiff names as Defendants all other related insurers and
fiduciary bondholders, and unnamed John Doe 1 and Jane Doe 1, he makes no
allegations against any of these entities or individuals and does not attempt to
explain the basis for naming them as Defendants.  Therefore, the Complaint is
dismissed as to these Defendants for failure to plead a claim upon which relief
may be granted.

amount of the difference divided by 36.  [*Id.*].  To prevent the automatic monthly mortgage payment increase, the Plaintiff submitted a financial hardship withdrawal request from his 401k retirement plan and used those funds to make a lump sum payment to Wells Fargo in satisfaction of the shortage.  [*Id.* at ¶ 6].  Due to the withdrawal, the Plaintiff alleges that he suffered financial repercussions, including a six-month contribution moratorium, the loss of his employer's contribution match, and a tax penalty.  [*Id.* at ¶ 7].

On or around October 23, 2012, Wells Fargo received and cashed the check it received from the Plaintiff to pay the escrow shortage.  [*Id.* at ¶ 9].  In November 2012, the first month that would require the new lower payment, the Plaintiff paid the lower mortgage amount specified in the September notice, and Wells Fargo received and cashed that check.  [*Id.* at ¶ 10].  However, the Plaintiff alleges that Wells Fargo refused to honor the terms of the September 5, 2012 notice by refusing to accept the lower mortgage payment rate and, without notice, placed the Plaintiff in delinquent status.  [*Id.* at ¶ 12].  The Plaintiff alleges in a conclusory fashion that 'this was not the first time that [Wells Fargo] had artificially increased the [P]laintiff's monthly mortgage payment though the 'balance escrow shortage' scheme.  This has happened many times in the preceding five years of 2012."  [*Id.* at ¶ 13].  The Plaintiff does not detail, however,

any other instance when he received notices describing a short in his escrow fund.[2]

The Plaintiff alleges that instead of correcting the balance on his escrow account, as he had already paid the required lump sum amount, the Defendant "has taken the most extreme measures of reporting the plaintiff to all of the credit bureaus of the United States for non-payment even though the plaintiff has not missed a single payment . . . ." [*Id*. At ¶ 15]. The Plaintiff also alleges that he called Wells Fargo numerous times to discuss the issue, but the matter was never resolved, and Wells Fargo continued to send "threatening" letters, including threats of foreclosure. [*Id*. at ¶ 16].

On February 17, 2013, the Plaintiff sent a letter to the Defendant asking it to explain why Wells Fargo continued to request a higher mortgage payment even though there was no escrow shortage. He also asked Wells Fargo to explain in writing what happened to the payment the Plaintiff made to extinguish the escrow balance shortage. [*Id*. at ¶ 17]. This notice clearly listed the Plaintiff's account number and provided a brief summary of the issue with his escrow payment. The Plaintiff alleges that the Defendant has not responded to this letter or explained why the lump sum payment made by the Plaintiff was not applied to the escrow

---

[2] The Plaintiff does include similar escrow shortage notices in his Notice of Voluntary Disclosure of Material Facts in Support of his Amended Complaint [Dkt. 15], but these notices appear to be standard escrow shortage notices that occur when either tax rates or insurance premiums increase. There is nothing fraudulent on the face of the notices.

shortage.  [*Id.*].  The Defendant has admitted that it made an error(s) in servicing the Plaintiff's mortgage due to computer system incompatibilities and integration challenges after the merger.

Instead, the Plaintiff alleges that on April 7, 2013, April 10, 2013, and April 15, 2013, Wells Fargo sent the Plaintiff letters demanding payment and stating that if payment was not made, Plaintiff would risk acceleration of the mortgage and potential loss of the property.[3]  [*Id.* at ¶ 50].  The Plaintiff further alleges that the Defendant obtained or was granted an order by the court either granting or providing the right to proceed to a foreclosure action.  [*Id.* at ¶ 20].  The Plaintiff was not certain as to the details of this action because no court papers were ever provided to him.  [*Id.*].  However, he does allege that the Defendant obtained a second and invalid quit claim deed from his ex-wife allegedly used to commence the foreclosure proceeding against him.  [*Id.* at ¶ 24].  He alleges that this was impermissible because the first quit claim was obtained from her just subsequent to their divorce, and the deed was recorded by the town of East Hampton.  [*Id.* at ¶ 23].  Over the course of the dispute, the Plaintiff also alleges that Wells Fargo sent a surveyor or inspector to his property without his permission to inspect and take photographs of the residence, seemingly to prepare for a foreclosure action or to ensure that the property was properly kept.  [*Id.* at ¶ 28].

---

[3] The Exhibits attached to the Notice of Voluntary Disclosure of Material Facts in Support of his Amended Complaint [Dkt. 15] include four letters dated April 7, 2013, April 15, 2013, May 12, 2013, and June 9, 2013.  No explanation is given for the discrepancy in the dates.

The Plaintiff alleges that the last time he spoke with Wells Fargo, in an apparent attempt to reconcile the dispute, Wells Fargo promised to remedy the situation by taking the following steps: (1) issuing a new mortgage payment coupon reflecting the corrected monthly mortgage payment amount pursuant to the September 5, 2012 stipulation; (2) applying the sum received from the Plaintiff for the balance of the escrow shortage; (3) correcting and retracting all false information sent to all of the major credit bureaus ("CRA") that discredited and damaged the Plaintiff's credit score; (4) returning all monies paid for three months or more to the property inspector responsible for inspecting the property, and applying that sum to the Plaintiff's mortgage principal; (5) sending to the Plaintiff a copy of the quit claim deed allegedly executed and sent to Wells Fargo by the Plaintiff's ex-wife; and (6) correcting all interests paid toward the Plaintiff's mortgage for the year of 2012 for the purpose of filing an amendment with the IRS to accurately report all interests paid by the Plaintiff for that year.  [*Id*. at ¶ 22].

However, the Plaintiff alleges that on June 10, 2013, the Defendant reinstated a private mortgage that was previously discontinued in retaliation for the present litigation.  [*Id*. at ¶ 27].  Moreover, the Plaintiff alleges that this dispute has caused him severe emotional distress, humiliation, financial hardship, severe property damage, and physical harm in the form of a sleeping disorder.  [*Id*. at ¶ 21].

### III.    Legal Standard

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. United States*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Fed. R. Civ. P.  8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citations and internal quotation marks omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

In general, the Court's review on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

When a party pleads fraud, the alleged fraud must be pled with the particularity required by Rule 9(b). Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In this Circuit, therefore, a complaint based on fraudulent acts must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). "Rule 9(b) [also] provides that '[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally.' However, to safeguard a

defendant's reputation from unsubstantiated charges of wrongdoing or a strike suit, the Second Circuit has instructed that plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" *Parola v. Citibank (South Dakota) N.A.*, 894 F. Supp. 2d 188, 200 (D. Conn. 2012) (quoting Fed. R. Civ. P. 9(b) and *Gabrielle v. Law Office of Martha Croog*, No. 3:10-cv-1798(WWE), 2012 WL 460264, at *4 (D. Conn. Feb. 9, 2012) (citing *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004))). "The 'strong inference of fraud' may be established by either alleging facts to show that a defendant had both the motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Parola*, 894 F. Supp. 2d at 200 (D. Conn. 2012) (quoting *Gabrielle*, 2012 WL 460264, at *4 (citing *James F. Canning Agency v. Nationwide Ins. Co. of Am.*, No. 3:09-cv-1413(MRK), 2010 WL 2698292, at *2 (D. Conn. Mar. 10, 2010))).

*Pro se* complaints are held to a less stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also McKewon v. N.Y. State Comm'n on Judicial Conduct*, 377 F. App'x 121, 122 (2d Cir. 2010) ("In the case of a *pro se* complaint, a court must construe the complaint liberally, . . . and should not dismiss it without granting the plaintiff leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (citations and internal quotation marks omitted)). In fact, pleadings of a *pro se* party should be read "'to raise the strongest arguments that they suggest.'" *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)).

10

Even after *Iqbal*, which imposed heightened pleading standards for all complaints, *pro se* complaints are still to be liberally construed.  *See Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009).  However, dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet the minimum pleading standards.  *Paul v. Bailey*, No. 09 Civ. 5784(JSR)(JCF), 2010 WL 3292673, at *4 (S.D.N.Y. July 21, 2010) (citing *Rodriquez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).  Moreover, "while a district court generally should not dismiss a *pro se* complaint without granting the plaintiff leave to amend, such leave is not necessary when it would be futile."  *Basile v. Connolly*, 538 F. App'x 5, 8 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

IV.     Discussion

   A.  Count I – Fraud

The Plaintiff first alleges that the Defendant committed fraud by willfully and knowingly ignoring his payment in response to the September 5, 2012, notice and engaging in a systemic pattern of shorting his escrow account.[4]  [Dkt. 10, ¶¶ 34-42].

---

[4] The Plaintiff brings this cause of action under Conn. Gen. Stat. § 53-550 and the Connecticut Creditors' Collection Practices Act, § 36a-646 ("CCCPA").  The first provision, Conn. Gen. Stat. § 53-550, is the general statute of frauds that does not provide a private cause of action.  Reading the complaint liberally, the Court construes the Plaintiff's first count for one of common law fraud.  The CCCPA is also inapplicable to this case, as will be discussed *infra*.

"The essential elements of an action in common law fraud . . . are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury." *Parola*, 894 F. Supp. 2d at 200 (quoting *Sturm v. Harv Dev., LLC*, 298 Conn. 124, 142 (2010)).  Since this cause of action is based in fraud, the Plaintiff's allegations must be pled with the specificity required in Rule 9(b).

The Plaintiff asserts that Wells Fargo committed fraud because after the September 5, 2012 notice was received, the Plaintiff complied with all the requests made of him by sending a lump sum payment to satisfy the deficiency. Wells Fargo, however, processed his payment, but failed to record the payment as being in satisfaction of the escrow shortage.  Instead, it processed the payment, but still demanded a higher monthly mortgage payment.  These allegations do not support a claim for fraud and the Plaintiff does not state with the particularity required under Rule 9(b) any other allegations that would deflect a motion to dismiss.  He does not, for example, assert any facts showing that there was no escrow deficiency, that any Wells Fargo employee knew there was no mortgage deficiency, that a Wells Fargo employee sent him the September notice with the intent of inducing him to make the payment under false pretenses. He alleges no particularized facts supporting his claim that Wells Fargo's alleged failure to adhere to the terms of the September 5, 2012 notice was fraudulent. Mere allegations of a breach of contract are insufficient to support a claim for

fraud.  *See Censor v. ASC Techs. of Conn., LLC*, 900 F. Supp. 2d 181, 223 (D. Conn. 2012).

The Plaintiff has also failed to allege any facts that give rise to the requisite "strong inference of fraudulent intent."  The Plaintiff's allegations that Wells Fargo "knew or had every reason to believe that the statements made on the September 5, 2012 letter were untrue," that the statements "were made with the intent of inducing the plaintiff to rely on [them] and act on its reliance thereon," that Wells Fargo "had every reason to believe that plaintiff would act" on these statements, and, finally, that Wells Fargo's actions were done "intentionally, maliciously and outrageously," are insufficient labels or conclusions.  *See Parola*, 894 F. Supp. 2d at 201 (dismissing fraud claim under Rule 9(b) where conclusory allegations that statements were "purposeful and malicious . . . failed to plead with particularly any facts that give rise to a strong inference of fraudulent intent as required" by the rules); *see also Flaherty v. Schettino*, 136 Conn. 222, 227 (1949) ("The intention of the promisor not to perform cannot be established by proof of nonperformance only").  Accordingly, since the Plaintiff has failed to allege sufficient facts with the specificity required by Rule 9(b), his fraud claim is DISMISSED.

### B.  Count II – Mail Fraud

The Plaintiff next alleges a count of mail fraud, but for the reasons stated above, this claim also fails for lack of conformity with Rule 9(b).  [Dkt. 10, ¶¶ 43-48].  The claim, however, must also be dismissed because there is no private

cause of action for mail fraud under 18 U.S.C. § 1341.  *See Pharr v. Evergreen Garden, Inc.*, 123 F. App'x 420, 422 (2d Cir. 2005) ("The law in this circuit is clear that [18 U.S.C. § 1341] does not support any private right of action."); *In re Trilegiant Corp.*, No. 3:12-cv-00396(VLB), 2014 WL 1315246, at* 5 (D. Conn. March 28, 2014).  The Plaintiff also alleges that this count was premised on the CCCPA, but as will be discussed below, this claim is insufficiently pled.  Accordingly, Count II is DISMISSED.

### C.  Count III – Unfair Debt Collection

The Plaintiff alleges that Wells Fargo engaged in "unfair debt collection" practices in violation of CCCPA.  [Dkt. 10, ¶¶ 49-55].  The CCCPA bars any creditor from "us[ing] any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect a debt in violation of section 36a-646 or the regulations adopted pursuant to section 36a-647."  Conn. Gen. Stat. § 36a-648.  Section 36a-646 provides, in relevant part, that "[n]o creditor shall use any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt."  Conn. Gen. Stat. § 36a-646.

As discussed *supra*, the Plaintiff has not pled sufficient facts required by Rule 9(b) to maintain a claim that Wells Fargo used a "fraudulent, deceptive or misleading representation, device or practice."  Conn. Gen. Stat. § 36a-648.  There are no allegations that sufficiently state why or how the escrow shortage was a fraudulent or deceptive practice.  Instead, this is a common mechanism for

ensuring that increases in property taxes and insurance premiums are covered. Therefore, without allegations that the escrow shortage or the resulting behavior was somehow knowingly false and intentionally made to induce the Plaintiff to make the payment, that is that it was fraudulent, this claim is insufficiently pled. There remains, however, the issue of whether the Plaintiff has alleged any abusive or harassing behavior in violation of the statute.

The Plaintiff alleges that Wells Fargo sent him four letters during the course of this dispute, roughly an eight-month period. These letters claimed that his mortgage payments were in arrears because the amount paid was below that which was required. Wells Fargo also sent a property inspector three times to verify that the property was being properly kept. These allegations are insufficient to sustain a motion to dismiss for abusive or harassing behavior. First, the initial September 5, 2012 letter appears to be -- and there is nothing in the record tending to show that it is not -- a standard escrow account notice. [Dkt. 15, Plaintiff's RICO Case Statement, Ex. 3]. The notice states that "[e]ach year we review your escrow account to make sure the escrow portion of your monthly mortgage payment covers your property taxes and/or insurance premiums. Increases or decreases in your annual taxes and/or insurance premiums may cause your monthly mortgage payment amount to change." [*Id.*]. The letter then details the payment options and the amount due. In the absence of any facts tending to show that a person responsible for sending the letter knew that it was false, the letter is neither harassing nor abusive. On the contrary, it is informative. Indeed, under Connecticut law, a mortgage lender is obliged to

15

demand payment from a mortgagee before initiating a foreclosure proceeding. *See* Conn. Gen. Stat. § 8-265ee ("On and after July 1, 2008, a mortgagee who desires to foreclose upon a mortgage . . . shall give notice to the mortgagor by registered, or certified mail, postage prepaid at the address of the property which is secured by the mortgage.  No such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice. . . . Such notice shall advise the mortgagor of his delinquency or other default under the mortgage and shall state that the mortgagor has sixty days from the date of such notice [to correct the delinquency].").

The April 7, 2013 letter is a standard past due notice, stating that "[t]he total amount required to bring your mortgage current is $2,032.33.  This amount must be received by April 12, 2013.  Please be aware that foreclosure action on your home may continue until your account is current or an alternative solution is reached, so we urge you to contact us right away."  [*Id.* at Ex. 5].  The April 15, 2013 notice is also a standard notification to the Plaintiff that his mortgage was in default and that if the balance is not remedied, "it will become necessary for [Wells Fargo] to accelerate the Mortgage Note and pursue remedies against the property as provided for in the Mortgage or Deed of Trust."  [*Id.* at Ex. 6].

The letters dated May 12, 2013 and June 9, 2013 are standard past-due notices sent to the Plaintiff.  [*Id.* at Ex. 7 and 8].  The Plaintiff does not explain how any of these letters violate the CCCPA by constituting harassing or abusive behavior.  Indeed, the regulations adopted by the Department of Banking

pursuant to Section 36a-647 specifically permit a creditor to contact a debtor regarding outstanding deficiencies, except in certain circumstances such as at the place of the debtor's employment, when the creditor knows the debtor is represented by an attorney, or at any unusual place or time or place known to be inconvenient or embarrassing to the debtor.  *See* Sec. 36a-647-4.  Here, the letters were mailed to the Plaintiff at his residence, which is permitted by the CCCPA and the regulations adopted thereunder, and they do not contain any patently abusive or harassing language.  S*ee Rogers v. Capital One Servs., LLC*, No. 10-cv-398(VLB), 2011 WL 873312, at *12 (D. Conn. Feb. 19, 2011) (dismissing a CCCPA claim when the letters sent to the debtor provided sufficient disclosures that actually precluded a finding that they were "fraudulent, deceptive, or misleading"), *aff'd*, 447 F. App'x 246 (2d Cir. 2011).

Finally, the number of letters sent to the Plaintiff also does not present the indicia of a campaign of harassment or abusive behavior.  *See, e.g., Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1465-66 (C.D. Cal. 1991) (mailing 48 letters to a consumer in eight-month period was not harassing); *Spira v. Ashwood Fin., Inc.*, 371 F. Supp. 2d 232, 238 (E.D.N.Y. 2005) (granting summary judgment when a plaintiff alleged harassment based on the fact that the defendant "was simply attempting to collect a debt which plaintiff has never challenged by sending her collection letters"); *Healey v. Trans Union LLC*, No. C09-0956(JLR), 2011 WL 1900149, at *7 (W.D. Wash. May 18, 2011) (four letters, the rate of one a month, using polite, informative language and asking to remit payment immediately were not harassing, abusive or oppressive as a matter of

17

law);  *Fallas v. Cavalry SPVI, LLC,* No. 3:12-cv-05664(PGS), 2013 WL 1811909, at *8 (D.N.J. Apr. 29, 2013) ("the quantity or frequency of letters—three in a period of many months—also do not suggest harassment."); *Larobina v. Wells Fargo Bank, N.A.*, 3:10-cv-1279(MRK), 2012 WL 1032953, at *12 (D. Conn. March 27, 2012) (finding sufficient allegations of harassment when creditor called the debtor ten to twelve times a day).[5]  Therefore, the letters alone do not support a claim for abusive or harassing practices.

The Plaintiff also does not sufficiently allege that the property inspector's actions were either harassing or abusive.  Indeed, the Plaintiff does not allege that he ever saw or talked with the inspector or even knew when he was present at the property.  The Plaintiff also alleges that it was "especially humiliating and embarrassing to the Plaintiff, for the Defendant's agents at the Wells Fargo Bank, N.A. at the following locations to tell the Plaintiff that his mortgage payments were not sufficient both in Jupiter, Florida by Ms. Hemandri on 2/15/13 and in East Hartford, Connecticut by Ms. Maria on 4/15/13 in front of other customers."  [Dkt. 10, ¶ 26].  The Plaintiff does not allege that Wells Fargo attempted to contact and embarrass or harass him; instead, it appears that he went to the bank in an attempt to resolve the dispute.  Moreover, he does not allege that the

---

[5] Because a private right of action has only existed under the CCCPA since July 2007, courts often consider and cite as persuasive authority cases decided under the federal Fair Debt Collection Practices Act ("FDCPA") because the CCCPA "parallels the FDCPA."  *Lienfactors, LLC v. Chung Kung*, No. MMXCV095006629S, 2010 WL 3171599, at *3 (Conn. Super. Ct. July 9, 2010); *see also Larobina*, 2012 WL 1032953, at *12 (collecting cases decided under the FDCPA).

representatives were unusually loud, rude or otherwise hostile in an attempt to shame the Plaintiff.  These allegations are wholly insufficient to sustain a motion to dismiss on this count.

To the extent that the Plaintiff's claim is based on the false reporting of "the Plaintiff to all of the United States credit bureaus for being late on his mortgage payments thereby causing him severe financial damage," [Dkt. 10, ¶ 52], the count should also be dismissed because the Fair Credit Reporting Act, 15 U.S.C. § 1681t(b)(1)(F), contains an "absolute immunity provision" that bars and preempts state law claims against "furnishers of information" like Wells Fargo for allegedly providing inaccurate information to consumer credit reporting agencies. *See Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 48 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 2113 (2012); *Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 175 (E.D.N.Y. 2012).[6]

Finally, the Plaintiff's claim that Wells Fargo retaliated against him for filing this action by reinstating the insurance on his mortgage fails to plausibly allege a CCCPA violation because he has not shown or alleged how reinstatement of private mortgage insurance constitutes unlawful debt collection activity pursuant to the statute.  Accordingly, Count III and all other counts based on this aspect of the CCCPA are DISMISSED.

---

[6] Even assuming the absolute immunity provision does not preempt common law tort causes of action, the Plaintiff has insufficiently pled malice or intent as related to any torts for which he could bring a cognizable claim.  Therefore, his cause of action would similarly be dismissed.

19

### D.  Count IV – Civil Conspiracy

The Plaintiff alleges a count of civil conspiracy against Wells Fargo, claiming a conspiracy between the Defendant, the Plaintiff's ex-wife, and the property inspector.  First, he alleges that Wells Fargo "claimed to have received a Quit Claim Deed from the Plaintiff's ex-wife, helped executed [*sic*] by her bankruptcy attorney, and [Wells Fargo] knew or should have known to be fraudulent and have seized the opportunity [*sic*] to defraud the plaintiff through a civil conspiracy while trying to foreclose on the plaintiff's property and confiscated [*sic*] his money paid for the alleged shortage of escrow balance." [Dkt. 10, ¶ 59].  He also alleges that Wells Fargo "conspired with the home inspector for inspecting the Plaintiff's home on their behalf (the property) for several months.  This action by the Defendants was done with the ultimate goal to defraud the Plaintiff . . . causing severe mental anguish, severe emotional and mental distress, humiliation, loss of enjoyment of life . . . ."  [*Id.* at ¶ 60].

As these allegations are both based on fraud, the Plaintiff's claims must be dismissed, as discussed above, for failure to plead with the requisite specificity under Rule 9(b).  First, he fails to identify how he was actually defrauded by the conspiracy between his ex-wife and Wells Fargo because no foreclosure action was ever alleged to have taken place, and he does not allege the specifics of the conspiracy or the alleged fraudulent behavior.  As to the second conspiracy, he does not allege how he was defrauded by the property inspector or how the property inspector actually caused him extreme anguish.  There is no allegation

20

that the Plaintiff even knew that the property inspector was present on his property or that other individuals were so aware. Without alleging any facts related to the alleged conspiracies, the specificity requirement has not been met.

Moreover, the Plaintiff does not identify the unlawful acts engaged in by the conspirators. In Connecticut, there is "no independent claim of civil conspiracy. Rather, the action is for damages caused by *acts committed pursuant to a formed conspiracy rather than by the conspiracy itself.* . . . Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Macomber v. Travelers Prop. And Cas. Corp.*, 277 Conn. 617, 636 (Conn. 2006) (citations and internal quotation marks omitted) (emphasis in the original). "The elements of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Id.* at 635-36 (quoting *Harp v. King*, 266 Conn. 747, 779 (Conn. 2003)).

Here, the Plaintiff's complaint fails on multiple fronts. First, he does not allege any specific acts by either alleged conspiracy that were unlawful or done by criminal or unlawful means. He only alleges that Wells Fargo claimed to have a quit claim deed obtained from his ex-wife, but does not allege that any foreclosure proceedings or any other actions against him were taken using that quit claim deed. Moreover, he does not allege any damage with respect to the

conspiracy between his ex-wife and Wells Fargo.  Finally, he does not allege how either conspiracy came into existence, meaning he does not allege the "express or tacit agreement" by the parties to achieve some unlawful end.  *Harp*, 266 Conn. at 781.  At best, he alleges independent related actions without any facts showing that the parties consented to act in concert; much less to act in concert to commit any particular unlawful act with the intent to harm the Plaintiff.  Without explaining how and what the parties agreed to, there can be no conspiracy.  For these reasons, the Plaintiff's claim for civil conspiracy is DISMISSED.

### E.  Count V – RICO

The Plaintiff alleges that Wells Fargo violated RICO.  As an initial procedural matter, the Plaintiff has failed to provide the requisite RICO case statement pursuant to this Court's standing order.  That order requires the Plaintiff to file a RICO case statement within 20 days of filing the complaint, clearly stating, among other things: the alleged unlawful conduct in violation of RICO; the identity of each defendant and the alleged misconduct and basis of liability for each defendant; a description of the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim; a detailed description of the alleged enterprise for each RICO claim; and the benefits, if any, the alleged enterprise receives or has received from the alleged pattern of racketeering.  *See* Standing Order in Civil RICO Cases for the District of Connecticut.  Here, the Plaintiff failed to file his disclosure statement within 20 days of filing his Complaint, and the Plaintiff's belated statement is devoid of any facts, consisting

instead of a series of exhibits.  This is insufficient as a procedural matter for bringing a civil RICO claim.  *See Daigneault v. Eaton Corp.*, No. 3:06-cv-1690(JCH), 2008 WL 410594, at *8-*9 (Feb. 12, 2008).[7]

Ignoring the procedural error, the Plaintiff has also insufficiently pled a RICO claim.  Section 1962 of RICO provides, in relevant part, that

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

[7] The Plaintiff was made aware of the RICO case statement requirement in a previous lawsuit he filed in this district.  *See Claude v. Am. Exp. Centurion Bank*, No. 3:10-cv-742(JBA), 2011 WL 2619065, at *2, n.3 (D. Conn. July 1, 211)

> **(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.**

18 U.S.C. § 1692.

Accordingly, RICO "creates a private right of action for any person injured in his business or property by reason of a violation of" the statute. *Frey v. Maloney*, 476 F. Supp. 2d 141, 159 (D. Conn. 2007) (citations and internal quotation marks omitted). To establish a claim under RICO, "a plaintiff must show: (1) a violation of the RICO statute . . . ; (2) an injury to business or property; and (3) that the injury was caused by the violation of" the RICO statute. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (citations and internal quotation marks omitted). To prove a violation of the RICO statute, a plaintiff must plead that the violation occurred through the "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity.'" *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 118 (2d Cir. 2013) (the complaint must also allege "'injury to business or property as a result of the RICO violation . . . ' [and] [t]he pattern of racketeering activity must consist of two or more predicate acts of racketeering") (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)). Finally, "all allegations of fraudulent predicate acts [under RICO] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004); *see also Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013). "Racketeering activity," "pattern of racketeering activity," and

24

"enterprise" are defined in the statute.  "Racketeering activity" means any of a number of listed acts or threats that are independently prohibited under state or federal law.  18 U.S.C. § 1961(5); *Harvey v. Harvey*, 931 F. Supp. 127, 130 (D. Conn. 1996) ("The offenses which may serve as predicate acts for a RICO claim are listed in 18 U.S.C. § 1961 . . . [and] [t]he list is exclusive.").  A "pattern of racketeering activity," in turn, "requires at least two acts of racketeering activity" occurring within specified time limits.  18 U.S.C. § 1961(5); *4 K & D Corp. v. Concierge Auctions, LLC*, No. 13 Civ. 2527(JGK), 2014 WL 904451, at *5 (S.D.N.Y. March 10, 2014) ("To state a RICO claim, the plaintiff must allege two or more related predicate acts that constitute a pattern of racketeering activity) (internal quotation marks omitted) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997)).  An "enterprise' includes any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Rosenson v. Mordowitz*, No. 11 Civ. 6145(JPO), 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)).

The Defendant first argues that the Complaint does not sufficiently allege an enterprise.  The Court agrees.  The Plaintiff does not allege any facts or allegations from which it can be inferred that Wells Fargo entered into either an explicit or implicit agreement with anyone else to violate the substantive

25

provisions of RICO.  *See United States v. Applins*, 637 F.3d 59, 74-75 (2d Cir. 2011); *In re Trilegiant*, 2014 WL 1315244, at *10.  "[A] solitary entity cannot, as a matter of law, simultaneously constitute both the RICO 'person' whose conduct is prohibited and the entire RICO 'enterprise.'"  *Cadle, Co. v. Flanagan*, 271 F. Supp. 2d 379, 387 (D. Conn. 2003) (quoting *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 161).  "The Supreme Court has held that the 'person' liable under Section 1962(c), i.e. the Civil RICO defendant, must be an individual that is a distinct entity from the RICO 'enterprise.'"  *Daigneault v. Eaton Corp.*, No. 3:06-cv-1690(JCH), 2008 WL 2604929, at *2 (D. Conn. June 16, 2008) (citing *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 161).  Here, the Plaintiff has only alleged one corporation, Wells Fargo, as the enterprise of his RICO claim.[8]  He does not, however, name any particular officials or employees who have any independent identity that engaged in the RICO activity.  Assuming that the RICO claim is based on Wells Fargo's associations with the Plaintiff's ex-wife and/or the property inspector, he has not sufficiently alleged an agreement to violate RICO or commit any unlawful acts.  Accordingly, the Plaintiff's RICO claim is insufficiently pled for failure to allege and enterprise within the meaning of RICO.

The Plaintiff also fails to allege that Wells Fargo committed any of the requisite predicate acts.  He alleges in a conclusory manner that Wells Fargo committed mail and wire fraud by mailing him four or five collection notices,

_____

[8] Even though the Plaintiff maintains that Wells Faro Bank and Wells Fargo Home Mortgage are independent, Wells Fargo Home Mortgage merged into Wells Fargo Bank and now does not exist as its own legal entity.  [Dkt. 28, pp. 20-21].

26

engaging in "unlawful banking practices" including collection of unlawful debt, artificially changing the mortgage rate, and engaging in "racketeering and predatory lending practice[s]."  [Dkt. 10, ¶ 63].  The Plaintiff has not alleged sufficient facts for this Court to conclude that any of the above-mentioned actions violated RICO.  Regarding the letters, which form the basis for the mail and wire fraud predicate acts, the Plaintiff does not allege how these letters were in fact fraudulent, aside from the fact that the amount owed was disputed.  The Plaintiff has failed to plead any specific facts, as distinct from the legal conclusions he asserts, which tend to show that this conduct was nothing more than "conduct undertaken in the ordinary course of business," which is ultimately insufficient to plead a RICO claim.  *Book v. Mortg. Elec. Regs. Sys.*, 608 F. Supp. 2d 277, 292 (D. Conn. 2009) (claims regarding threatening foreclosure "are nothing more than conduct undertaken in the ordinary course of business or litigation and cannot be fairly characterized as extortion that is independently wrongful under RICO").  Furthermore, the remaining allegations of potential predicate acts are insufficiently pled to permit this Court to even identify whether they are contained in the exclusive list of predicate acts in the statute. Accordingly, the Plaintiff's RICO cause of action is DISMISSED.

### F.  Count VI – Statutory Theft and Conversion of Funds

The Plaintiff alleges that the Defendant committed the tort of conversion or committed statutory theft because Wells Fargo converted or stole the $2,218.17 that the Plaintiff allegedly paid pursuant to the September 5, 2012 escrow notice

27

statement by not lowering his monthly payment amount in accordance with the notice's terms.  [Dkt. 10, ¶ 73; Dkt. 42, Plaintiff's Objection to Motion to Dismiss, p. 20].

    To maintain a claim for conversion in Connecticut, the Defendant must allege "[a]n unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm." *Aztec Energy Partners, Inc. v. Sensor Switch, Inc.*, 531 F. Supp. 2d 226, 229 (D. Conn. 2007) (quoting *Aetna Life & Cas. Co. v. Union Trust Co.*, 230 Conn. 779, 790-91 (1994)).  In *Aztec Energy Partners*, the plaintiff returned a product to the defendant voluntarily, seeking a refund in exchange for the item.  *Id.*  The court held that there was no conversion because the products were voluntarily returned, and a mere allegation "to pay money may not be enforced by a conversion action . . . and an action in tort is inappropriate where the basis of the suit is a contract, either express or implied."  *Id.* (quoting *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 650 (2002)).  Similarly here, the Plaintiff voluntarily sent funds under the terms of the September 5, 2012 notice, assuming that by sending this money, a lower monthly mortgage rate would be applied.  He alleges, however, that the Defendant violated the terms of this agreement by not applying the lower monthly rate.  The appropriate cause of action would be one for breach of contract, not for conversion.  The conversion claim, therefore, is DISMISSED.

28

The Plaintiff also alleges a claim of statutory theft based on the same factual allegations as the conversion claim.  Statutory theft is "synonymous with larceny under General Statutes § 53a-119."  *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 44 (2000).  "Therefore, to establish a claim for statutory theft, a plaintiff must plead and prove: 1) the product belonged to [the Plaintiff]; 2) [the Defendant] intentionally deprived [the Plaintiff] of its products; and 3) that [the Defendant's] conduct was unauthorized."  *Aztec Energy Partners*, 531 F. Supp. 2d at 231 (citing *Discover Leasing, Inc. v. Murphy*, 33 Conn. App. 303, 309 (1993)).  "Statutory theft is different from conversion in two ways: 'first, statutory theft requires an intent to deprive another of his property; [and] second, conversion requires the owner to be harmed by defendant's conduct.'"  *Id.* (quoting *Suarez-Negrete v. Trotta*, 47 Conn. App. 517, 520-22 (1998)).  In *Aztec Energy Partners*, the court dismissed the statutory theft claim because the product was returned voluntarily by the Plaintiff, meaning that the plaintiff failed to allege sufficient ownership after that point.  *Id.*  In this case, the Plaintiff mailed the money to Wells Fargo in hopes of achieving a lower monthly mortgage payment.  He does not allege that the money was stolen; instead, he alleges that the Defendant breached the terms of its contract.  It could have been the case that the lump sum payment intended to pay off the escrow shortage was applied to the principal mortgage, meaning that the total amount the Plaintiff owed was reduced.  There are no allegations that the Defendant took and used the money to the detriment of the Plaintiff.  The Plaintiff's argument that the Defendant committed statutory theft by violation RESPA is also without merit.  Statutory theft does not mean a

theft occurs when a statute is violated.  As will be discussed later, there is some merit to the Plaintiff's claim under RESPA related to the escrow shortage, but such a violation does not convert itself into a state law tort violation or one for statutory theft.

Finally, as stated *supra*, the Plaintiff has failed to allege sufficient facts demonstrating Wells Fargo's intent to commit statutory theft.  Without specific allegations as required by the rules, the Court cannot find that the Plaintiff has sufficiently pled either the conversion claim or the statutory theft claim.  This count, therefore, is DISMISSED.

### G.  Count VII – Equal Credit Opportunity Act

The Plaintiff alleges a violation of the ECOA claiming that the Defendant caused intentional damage to his credit score based on his marital status.  [Dkt. 10, ¶ 78].  "The ECOA provides for a private cause of action based on disparate impact or disparate treatment."  *Powell v. Am. Gen. Finance, Inc.*, 310 F. Supp. 2d 481, 487 (N.D.N.Y. 2004).  The relevant part of the ECOA prohibits lenders from denying credit to individuals because of their race, color, religion, national origin, sex, marital status, or age.  *See* 15 U.S.C. § 1691*, et seq.*; *see also* 12 C.F.R. § 202.1.  "Proof of intentional discrimination under the ECOA generally follows the same burden-shifting methodology employed in Title VII cases."  *Thompson v. Marine Bank*, No. 99-7051, 198 F.3d 235, 1999 WL 752961, at *2 (2d Cir. Sept. 6, 1999) (unpublished opinion) (citing *Gross v. Small Bus. Admin.*, 669 F. Supp. 50, 53 (N.D.N.Y. 1987), *aff'd*, 867 F.2d 1423 (2d Cir. 1988)).  "In order to establish a

30

prima facie case that defendant's practices caused disparate impact on the basis of one of the prohibited grounds under the ECOA, plaintiff must '(1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship exists between the two.'" *Gunter v. Long Island Power Auth./Keyspan*, No. 08-cv-498(RRM)(LB), 2011 WL 1225791, at *4 (E.D.N.Y. Feb. 15, 2011) (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001)).  In *Ng v. HSBC Mortg. Corp.*, the court dismissed a claim under the ECOA and the FHA when the complaint failed to allege that the plaintiff was "treated differently from similarly situated" others, and when the plaintiff only relied on conclusory allegations that the defendant had a policy to discriminate against minorities.  *Ng v. HSBC Mortg. Corp.*, No. 07-cv-5434(RRM)(VVP), 2010 WL 889256, at *11, *12 (E.D.N.Y. March 10, 2010).  Similarly here, the Plaintiff makes no allegations that the Defendant has a policy of or procedure for discriminating against married or divorced individuals, and there is no allegation about any specific treatment of any others similarly situated.  Accordingly, the Plaintiff has insufficiently pled an ECOA claim for discrimination.

The Plaintiff also seems to imply that the Defendant violated ECOA by failing to provide the disclosures required by the Truth In Lending Act.  "The purpose of [TILA] is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'"  *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 528-29 (E.D.N.Y. 2006) (quoting 15 U.S.C. § 1601).  "TILA seeks to 'protect . . . consumer[s] against inaccurate and unfair

31

credit billing and credit card practices' and promote 'the informed use of credit' by 'assur[ing] a meaningful disclosure' of credit terms. *Vincent v. The Money Store*, 736 F.3d 88, 105 (2d Cir. 2013) (quoting 15 U.S.C. § 1601(a)). TILA, however, "imposes general liability only on creditors and greatly circumscribes the liability of assignees." *Id.* (citing 15 U.S.C. §§ 1640(a); 1641(e)). TILA defines a "creditor" as a person or entity who both:

> (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). "This definition is restrictive and precise, referring only to a person who satisfies both requirements of the provision." *Vincent*, 736 F.3d at 105 (citations and internal quotation marks omitted).

The Defendant here is not a creditor under TILA because the loan was not originally payable to Wells Fargo; instead, it was payable to 1-800 East West Mortgage Company, Inc., and later assigned to Wells Fargo. [Dkt. 28, Exs. A, B, and C]. Furthermore, both TILA and Connecticut's equivalent state statute provide that an assignee may be liable for a creditor's violation of the acts "only if the violation . . . is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a); Conn. Gen. Stat. § 36a-683(1)(k). Here, the Complaint does not allege any facts related to the assignment documents, nor does it really allege any facts

showing that the original mortgage document contained improper disclosures. The Court fails to see how TILA is at all implicated in this matter given that the Defendant is an assignee and the original debt instrument appears to be unrelated to the Plaintiff's claim.  The Plaintiff alleges in his opposition papers to the motion to dismiss that he refinanced his mortgage in 2009, which may or may not affect the Court's analysis, but he provides no allegations detailing this refinancing in the Complaint and fails to describe the actual refinancing in any detail in his opposition papers.  Instead, he only alleges that "[i]n December 2012, when the plaintiff started looking into his refinanced mortgage papers for his 2009 home affordable Act loan with the defendants, he discovered that the defendants had failed to disclose all of the necessary disclosure documents related to the refinancing of his loan."  [Dkt. 42, p. 31].  These allegations are insufficient to sustain a motion to dismiss.

Furthermore, TILA provides that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  The equivalent Connecticut statute also contains a one-year statute of limitations.  *See* **Conn. Gen. Stat. § 36a-683** ("Any action under this section shall be brought in any court of competent jurisdiction within one year from the date of the occurrence of the violation . . . .").  "It is well settled that the 'occurrence of the violation' means the date the plaintiff enters the loan agreement or, in the alternative, when the defendant performs by transmitting the loan funds from the plaintiffs."  *Boursiquot v. Citibank F.S.B.*, 323 F. Supp. 2d

33

350, 353 (D. Conn. 2004) (citing *Cardiello v. Money Store, Inc.*, No. 00 CIV. 7332(NRB), 2001 WL 604007 (S.D.N.Y. June 1, 2001)).  The Complaint here was filed more than eight years after the initial mortgage document was executed. Therefore, any TILA claim would also be time-barred.  Even if the Plaintiff argues that the alleged refinancing, which occurred in 2009, served as the basis of his TILA claim, the time period expired by, at most, December 31, 2011.  Since the initial complaint in this matter was filed on April 16, 2013, it was untimely.  The Plaintiff's claim for tolling is without merit.  He alleges that he did not notice that the disclosures were absent until he was reviewing his refinancing papers in preparation for the present litigation.  "The inability to discover a nondisclosure is not enough, by itself, to toll the statute."  *Boursiquot*, 323 F. Supp. 2d at 354. Therefore, the Plaintiff has not sufficiently pled a case for tolling.  Therefore, any claim arising under TILA would be time barred and this count is DISMISSED.

### H.  Count VIII – Malicious Abuse of Process

The Plaintiff alleges an abuse of process because "[t]he defendants have illegally placed the plaintiff in litigated foreclosure status."  [Dkt. 42, p. 27].  "An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed."  *Mozzochi v. Beck*, 204 Conn. 490, 494 (1987) (citations and internal quotation marks omitted).  "To state a claim for abuse of process, 'judicial process must in some manner be involved.'"  *Mac Donald v. Howard*, No. CV000176368S, 2000 WL 1687119, at *1 (Conn. Sup. Ct. Oct. 17, 2000) (quoting W.

Prosser & W. Keeton, Torts (5th Ed. 1984)).  "Judicial process is defined as the 'process which is used to inform the defendant of the institution of proceedings against him and to compel his appearance, in either civil or criminal cases.'" *Id.* (quoting Black's Law Dictionary (6th Ed. 1990)).  Courts have held that "the invocation of judicial authority is an essential element of an abuse of process claim." *Id.*; *see also Long v. Long*, 136 N.H. 25, 30 (N.H. 1992); *Wells v. Waukesha Cnty. Marine Bank*, 135 Wis.2d 519, 537 (Wis. Ct. App. 1986).  Here, the Plaintiff has not alleged that the Defendant has in fact commenced any judicial process against him.  Instead, he cites, as the basis for this claim, that he received several collection letters stating that he was in foreclosure.  Interestingly, these letters do seem to imply that a foreclosure process has indeed started by asserting that "[f]foreclosure action on your home may continue until your account is current or an alternative solution is reached, so we urge you to contact us right away." [*See, e.g.*, Dkt. 15, Ex. 8].  While this at first glance seems to imply that some proceeding has started, the letters do not allege that an actual *judicial* foreclosure action has started, nor do they compel the Plaintiff's appearance at any proceeding.  On balance, there are no facts alleged showing any invocation of judicial authority; as such, the claim must be DISMISSED.

    **I.   Count IX – Intentional Infliction of Emotional Distress**

The Plaintiff alleges that the Defendant committed intentional infliction of emotion distress by "subjecting him to predatory lending practices and causing

him to experience emotional distress and injury to his property and loss of money."  [Dkt. 10, ¶¶ 85-87].

"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established.  It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (citations and internal quotation marks omitted).  "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine."  *Id.*  "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society."  *Id.* (citations and internal quotation marks omitted).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  *Id.* at 210-11 (citations and internal quotation marks omitted).  "Conduct on the part of the defendant that is merely insulting or displays bad

36

manners or results in hurt feelings in insufficient to form the basis for an action based upon intentional infliction of emotional distress."  *Id.*

In *Appleton*, the court found insufficient a claim for intentional infliction of emotional distress when the plaintiff teacher complained that the principal of the school "made condescending comments to [her] in front of [her] fellow colleagues questioning [her] vision and ability to read; telephoned the plaintiff's daughter, representing that the plaintiff had been acting differently and should take a few days off from work; and telephoned the police, who came to the school and escorted the plaintiff out of the building to her car.  The plaintiff also asserted in her affidavit that she was subjected to two psychiatric examinations at the request of the board, and that she was forced to take a suspension and a leave of absence and, ultimately, forced to resign."  *Id.*  Here, the Plaintiff's allegations of the Defendant's actions, presumably sending a few default letters, having a property inspector take pictures of the property, and reporting the issue to the credit bureaus, do not qualify as the type of outrageous conduct required to sustain a motion to dismiss for a claim of intentional infliction of emotional distress.  The Plaintiff has also not sufficiently alleged the severe emotional harm necessary for this claim.  In *Rodriques v. J.P. Morgan Chase Bank*, the court held that even though the plaintiff alleged that he became "emotionally upset and nervous, endured many sleepless nights, and continue[d] to be nervous and frightened," the plaintiff did not submit evidence of the mental distress caused by the defendants sufficient to maintain a claim for intentional infliction of emotional distress.  *Rodriques v. J.P. Morgan Chase Bank*, No. 3:08-cv-1417(PCD), 2009 WL

37

3710688, at *8 (D. Conn. Nov. 3, 2009).  Similarly here, the plaintiff has not sufficiently alleged in any detail the type of emotional harm, aside from a sleeping disorder, necessary to sustain this claim.  Accordingly, this claim is DISMISSED.

### J.  Count X – Trespass

The Plaintiff alleges that the Defendant "conspired with [the] home inspector to invade and to perform inspection upon the Plaintiff's property while trespassing in violation of Connecticut laws against trespass and common law." [Dkt. 10, ¶ 89].  Later, in his opposition to the Defendant's motion, he alleges that each visit by the property inspector cost "$15 per month of inspection," and was conducted for "four consecutive months."  [Dkt. 42, p. 11].

"[T]he essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury . . . . The invasion, intrusion or entry must be physical. . . . Thus, in order to be liable for trespass, one must intentionally cause some substance or thing to enter upon another's land."  *Rickel v. Komaromi*, 144 Conn. App. 775, 782 (Conn. App. 2013) (citations and internal quotation marks omitted).

The Defendant only argues that the Plaintiff has failed to allege a trespass because "Wells Fargo was contractually authorized by Plaintiff's mortgage to have representatives secure and preserve the Property.  The parties' mortgage in this case permits the entry into and securing of the Property in certain

situations." [Dkt. 28, pp. 27-28]. "Uniform Covenant 9 grants the authority to Wells Fargo to '[s]ecure the Property,' including 'entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned off.'" [*Id.* citing Exhibit A]. However, Covenant 9 limits this right to situations where the "Borrower fails to perform the covenants and agreements contained in this Security Instrument; (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . . or (c) Borrower has abandoned the Property . . . ." [Dkt. 28-1, Exhibit A]. It is not clear from the Complaint, which this Court is bound to construe in the light most favorable to the Plaintiff, that any of these conditions apply. First, the Plaintiff alleges that he complied with the terms of the mortgage. While the Defendant may contest that fact, this is an affirmative defense, which is inappropriate to consider on a motion to dismiss. Second, there were no judicial or other legal proceedings that occurred at the time the property inspector allegedly visited the property. Third, the Plaintiff clearly did not abandon the property as he still submitted mortgage payments monthly. Therefore, the Defendant's argument is inappropriate at this juncture.

However, looking to the Plaintiff's allegations, he has failed to sufficiently plead a *prima facie* case of trespass. In the Complaint, he alleges that "[i]t was the most humiliating experience of the Plaintiff's life in which Wells Fargo Home Mortgage would send people over the plaintiff's property without his knowledge to inspect and take photos of his residence without his permission." [Dkt. 10, ¶

39

28].  "The latest trespassing lasted up to four months and unbeknown [*sic*] to the plaintiff."  [*Id.* at ¶ 29].  He does not allege that the intrusion was physical, as required to maintain a cause of action for trespass.  Instead, he only alleges that an inspector was sent to check on the property and take photos.  Furthermore, he does not allege that he ever talked to or met the inspector or even knew that the inspector was present.  Without alleging some physical intrusion that directly caused damages, he cannot sustain a motion to dismiss.   Accordingly, the Plaintiff's count for trespass is DISMISSED.

### K.  Counts XI and XIV

The Plaintiff alleges two different RESPA violations, first for failure to provide necessary disclosures and second for failure to respond to a qualified written request ("QWR") related to the escrow shortage.[9]  [Dkt. 10, ¶¶ 92-96, 110-114].

RESPA was enacted to provide "consumers . . . with greater and more timely information on the nature and costs of the settlement process and [to ensure consumers] are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."  12 U.S.C. § 2601; *see also Nelson v. JPMorgan Chase Bank,* 707 F.

---

[9] This count also alleges that Wells Fargo caused "intentional damage to the plaintiff [*sic*] credit score base [*sic*] on his marital status" in violation of TILA and ECOA.  [Dkt. 10, ¶ 111].  For the reasons discussed *supra* the claims arising under TILA and ECOA are dismissed.  Therefore, they are also dismissed as to this claim.

Supp. 2d 309, 315 (E.D.N.Y. 2009) ("RESPA was enacted to enable consumers to better understand the home purchase and settlement process (with respect to federally regulated mortgage loans) and, where possible, to bring about a reduction in settlement costs.") (citing 12 U.S.C. §§ 2603, 2604).  In theory, this protects consumers from "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services."  12 U.S.C. §§ 2601(a), (b)(2).  The Plaintiff alleges that the Defendant violated RESPA by not providing sufficient disclosures, specifically the "annual interest paid in connection with extended mortgage transaction; . . . the number, amount and timing of payments scheduled to repay the obligation; and . . . the total of [*sic*] payments."  [Dkt. 10, ¶ 93].  The Plaintiff cites several provisions of other statutes, including TILA, that require such disclosures, but fails to cite which provision of RESPA serves as the legal basis for his claim.  Furthermore, "even after being challenged by defendant's motion to dismiss," the Plaintiff "has not identified what RESPA provision plaintiff asserts defendant[ ] violated."  *Ngwa v. Castle Point Mortg., Inc.*, No. 08 CIV. 0859(AJP), 2008 WL 3891263, at *13 (S.D.N.Y. Aug. 20, 2008) (granting motion to dismiss when the plaintiff failed to state which provision of RESPA he alleged was violated).  The Plaintiff also fails to allege any facts or identify the disclosures required under RESPA that were omitted by and attributable to the Defendant.  These allegations, therefore, are insufficient to survive a motion to dismiss, and the Plaintiff's count for failure to provide RESPA disclosures is DISMISSED.

However, the Plaintiff also alleges a claim under § 2605(e).  This section of RESPA requires servicers of "federally related mortgage loan[s]" to respond in a prescribed time and manner to QWRs from borrowers and provides a private cause of action for violations of the statute.  12 U.S.C. §§ 2605(e)-(f).  A QWR is defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrowers; and (ii) includes a statement of the reasons for the belief of the borrowers, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).  The Defendant argues that the Plaintiff's claim must be dismissed because he has not alleged "that he suffered any actual damages purportedly flowing from Wells Fargo's alleged violations relating to Plaintiff's QWR."  [Dkt. 28, p. 32].

"A plaintiff bringing a [RESPA] § 2605 claim must sufficiently allege one of two types of damages: (1) 'actual damages to the borrower as a result of the failure' to comply with § 2605; or (2) statutory damages 'in the case of a pattern or practice of noncompliance with the requirements' of § 2605."  *Gorbaty v. Wells Fargo Bank, N.A.*, Nos. 10-cv-3291, 10-cv-3354, 2012 WL 1372260, at *3 (E.D.N.Y. Apr. 18, 2012) (quoting 12 U.S.C. § 2605(f)).  The Plaintiff here attempts to allege actual damages, and does not make any allegations related to a systemic pattern or practice of noncompliance.  Therefore, the "Plaintiff must suffer actual, demonstrable damages, and Plaintiff's damages must occur 'as a result of' that

42

specific violation." *Eichholz v. Wells Fargo Bank, N.A.*, No. 10-cv-13622, 2011 WL 5375375, at *5 (E.D. Mich. Nov. 7, 2011).

In *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, the court found the allegations in the complaint sufficient to sustain a motion to dismiss on a RESPA claim when the plaintiff alleged that as a result of the RESPA violations, he "suffered loss of retirement savings, loss of income, nausea, emesis, constant headaches, insomnia, embarrassment, and incurred an ascertainable loss." *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 111-13 (E.D.N.Y. 2011). Similarly, in *Hutchinson v. Del. Sav. Bank FSB*, the court denied a motion to dismiss a RESPA claim for lack of pleading sufficient damages when the plaintiffs allege that they suffered "negative credit ratings on their credit reports [and] the inability to obtain and borrow another mortgage loan and other financing." *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006).

Here, the Plaintiff alleges that the Defendant's actions caused him "severe mental anguish, severe emotional and mental distress, humiliation, loss of enjoyment of life, and extreme and severe mental suffering," including a "sleeping disorder" and "severe property damage." [Dkt. 10, ¶¶ 21, 113]. Generally, aside from the sleeping disorder, these are the types of conclusory allegations that are insufficient to sustain a motion to dismiss. *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 445 (E.D.N.Y. 2013) (conclusory allegations for a RESPA claim do not suffice). However, the Plaintiff does add

further allegations in its opposition to the Defendant's motion to dismiss.  While usually a party is not permitted to amend pleadings in this manner, given the leniency shown to *pro se* plaintiffs and the fact that the Court would provide the Plaintiff opportunity to replead this count, thereby guaranteeing that these allegations of damage would reappear in a subsequent complaint, the Court will examine these allegations in determining whether the Plaintiff has succeeded in alleging the requisite damages to sustain a motion to dismiss at this early stage in the litigation.

In his opposition brief, the Plaintiff states that it took him nearly two years "of phone calls and letters before the servicer finally straightened out the account.  In the meantime, the servicer wrongfully imposed late fees, reported the borrower to the CRAs as being delinquent," causing him severe stress.  [Dkt. 42, p. 36].  He also states that while the dispute between him and the Defendant continued, he attempted to increase his credit line with the "one credit card" that he has, but that "Credit One bank declined to increase the line" given his poor credit score.  [*Id.* at p. 24].  He also claims that he "spent a tremendous amount of time and inconvenience to bring this cause of action against the defendants and nearly a thousand dollars has been spent in the prosecution of this matter," stemming largely from the Defendant's failure to read and process the Plaintiff's QWR and correct its error, as required by RESPA.

Even though the question of the sufficiency of these allegations is very close, given the leniency shows to *pro se* plaintiffs and the fact that the Plaintiff

44

would be given a right to replead, the Court finds that the allegations in this case are sufficient at this early stage in the litigation to sustain a motion to dismiss. The Plaintiff has demonstrated real damages stemming from and caused by the RESPA violations.  The Defendant reported his delinquency to the CRAs resulting in his inability to increase his credit line, the Plaintiff spent over a thousand dollars prosecuting this case, the need for which would have been obviated had the Defendant timely realized its error, and Plaintiff has suffered from alleged physical and emotional stress, including suffering from a sleeping disorder. These types of allegations have been found sufficient in some cases, and given that this is a *pro se* action, the Court finds them sufficient here.  *See Midouin*, 834 F. Supp. 2d at 111-13; *Hutchinson*, 410 F. Supp. 2d at 383 (D.N.J. 2006). Therefore Wells Fargo's motion to dismiss the RESPA claim is DENIED.

### L.  Count XII – HOEPA

The Plaintiff alleges that the Defendant has, "in numerous instances, . . . violated, and continue[s] to violate, the requirements of HOEPA" by failing to provide the requisite disclosures to the Plaintiff.  [Dkt. 10, ¶¶ 98-99].

"HOEPA is a 1994 amendment to [the Truth in Lending Act] that applies specifically to 'high rate mortgages' and requires that certain additional, conspicuous disclosures be given with respect to such mortgages at least three days before the transaction is consummated." *Gorbaty*, 2012 WL 1372260, at *14 (citing 15 U.S.C. §§ 1602, 1639). Specifically, HOEPA applies to mortgages where:

> **(A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or**
>
> **(B) the total points and fees payable by the consumer at or before closing will exceed the greater of—**
>
>> **(i) 8 percent of the total loan amount; or**
>>
>> **(ii) $400.**

**15 U.S.C. § 1602(bb)(1).  For HOEPA to apply, the loan must be a secondary mortgage or a home equity loan, rather than a purchase money mortgage. *See Johnson v. Scala*, No. 05 Civ. 5529(LTS)(KNF), 2007 WL 2852758, at *4 (S.D.N.Y. Oct.1, 2007); *Grimes v. Fremont Gen. Corp.*, 785 F.Supp.2d 269, 288 (S.D.N.Y. 2011) (citing cases).**

**The statute of limitations for a HOEPA violation is three years from the date of the occurrence of the violation.  15 U.S.C. § 1640(e) ("Any action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation.").  Just as with the TILA claims, HOEPA claims are occurrence violations.  "It is well settled that the 'occurrence of the violation' means the date the plaintiff enters the loan agreement or, in the alternative, when the defendant performs by transmitting the loan funds from the plaintiffs." *Boursiquot,* 323 F. Supp. 2d at 353 (citing *Cardiello,* 2001 WL 604007).  Here, the**

loan closed on April 15, 2005, more than eight years before the Complaint was filed.  The Plaintiff argues that he did not discover the lack of disclosures until December 2012 when he started reviewing his refinancing papers.  However, loan modifications do not trigger any new disclosure requirements under HOEPA.  *See* 12 C.F.R. § 226.20(a).  Refinancings, on the other hand, do constitute new transactions that necessitate new disclosures to the consumer, but the Complaint does not discuss or provide any factual detail related to the refinancing.  Therefore, the Court cannot determine if the event in 2009 related to the mortgage was a refinancing under the regulations or a loan modification.  Since the Court cannot determine this, the HOEPA violation appears to be time barred.  Therefore, this count is DISMISSED.  Furthermore, "the inability to discover a nondisclosure is not enough, by itself, to toll the statute."  *Boursiquot*, 323 F. Supp. 2d at 354.  Therefore, the Plaintiff has not sufficiently pled a case for tolling.

Ignoring the statute of limitations issue, the Plaintiff has also insufficiently alleged a HOEPA violation.  As stated previously, Wells Fargo is not a creditor, as defined in the statute, but an assignee.  "To bring TILA and HOEPA violations against assignees, the violations must be apparent on the face of the agreement—meaning the predatory terms are not fraudulently concealed."  *Utreras v. Chicago Title Ins. Co.*, No. 12-cv-04766(RRM)(LB), 2013 WL 4700564, at *4 n.5 (E.D.N.Y. Sept. 1, 2013) (citing 15 U.S.C. § 1641(a)).  Here, the Plaintiff has not alleged, aside from simply repeating the statute, how the Defendant has violated HOEPA.  Moreover, he has not pled that his mortgage is subject to

HOEPA or the specifics of any one HOEPA violation.  Accordingly, this claim is
DISMISSED.

### M.  Count XIII – Predatory Lending

The Court is unclear as to the factual basis for the Plaintiff's predatory
lending claim.  He appears to allege that every aspect of his Complaint
contributed to the overall fraudulent and predatory lending scheme.

If the Plaintiff's claim is based on the events underlying the initial
mortgage, Wells Fargo is not liable because it was the servicer, not the originator
of the mortgage.  *See, e.g., Bonner v. Select Portfolio Servicing, Inc.*, No. 10-
00609(CW), 2010 WL 2925172, at *10 (N.D. Cal. July 26, 2010).  The Plaintiff also
fails to sufficiently plead a violation of the statutes cited in his Complaint related
to predatory lending.  As discussed previously, any claim that arises in fraud has
been insufficiently pled pursuant to Rule 9(b).  The Plaintiff's claims under TILA
are either time-barred or fail because the Plaintiff is not a creditor under TILA.
The Plaintiff's RESPA claim for predatory lending, which appears to be brought
under Section 2605(a), also only applies to loan originators, not servicers.
Finally, the HDMA and Conn. Gen. Stat. § 36a-726 do not establish private causes
of actions.  *See Swartz v. City Mortg. Inc.*, 911 F. Supp. 2d 916, 935 (D. Haw. 2012)
(citing 12 C.F.R. § 203.6).  Moreover, the Plaintiff does not allege exactly what
constituted "predatory lending"; at most he alleges questionable business
practices with respect to processing and recording payments, but nothing that
would rise to the level of predatory lending.  Accordingly, since the Plaintiff has

48

not sufficiently alleged any causes of action related to his predatory lending claim, the count is DISMISSED.

### N.  Count XV

The Plaintiff asserts several constitutional claims and other violations against Wells Fargo pursuant to 42 U.S.C. §§ 1981(a), 1983, 1985, and 2000d, *et seq.*, and the Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA").  [Dkt. 10, ¶¶ 115-18].  All of these claims are insufficiently pled to sustain a motion to dismiss.

#### i.  § 1981

"Section 1981 affords '[a]ll persons . . . the right . . . to make and enforce contracts, to sue, be parties, [and] give evidence.'"  *Jones v. Nat'l Commc'n and Surveillance Networks*, 409 F. Supp. 2d 456, 471 (S.D.N.Y. 2006) (quoting 42 U.S.C. § 1981(a)), *aff'd*, 266 F. App'x (2d Cir. 2008).  "To state a sufficient claim for relief under [§ 1981], the complaint must specifically allege (1) that the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more activities enumerated in Section 1981."  *Id.*  The Plaintiff does not allege that he is a racial minority, and only asserts that he was discriminated against on the basis of his marital status.  Accordingly, he has not sufficiently pled a § 1981 claim, and it is DISMISSED.

#### ii.  § 1983

Section 1983 provides that

> [e]very person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State . . .
> subjects, or causes to be subjected, any citizen of the
> United States . . . to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured.

42 U.S.C. § 1983.  "To state a claim under Section 1983, a plaintiff must 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States."  *Ray v. Cnty. Of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)).  Here, the Plaintiff does not allege that Wells Fargo was a state actor or was acting under color of state law.  Accordingly, his § 1983 claim is DISMISSED.

### iii.  § 1985

To state a cause of action under § 1985(3), "a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States."  *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted).  "A conspiracy is an agreement between two or more individuals, where one individual acts in furtherance of the objective of the conspiracy, and each member has knowledge of the nature and scope of the agreement."  *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 337-38 (S.D.N.Y. 1999), *aff'd sub nom., Dove v.*

*O'Hare*, 210 F.3d 354 (2d Cir. 2000).  "A conspiracy 'need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.'"  *Id.* (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995)).  "Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."  *Id.* (citations and internal quotation marks omitted).  "[A] plaintiff alleging a conspiracy under § 1985(3) must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy."  *Id.* at 147.

The Plaintiff has insufficiently pled a conspiracy, let alone any overt acts with the sufficient degree of particularity required, to sustain a motion to dismiss. The Plaintiff vaguely asserts that the conspirators "have engaged, and continue to engage in unfair acts or practices in discriminating against the Plaintiff's Constitutional Rights and his social status as a divorced consumer, by their failure to disengage in discriminating with its co-conspirators John doe 1 and Jane doe 1 regarding the Plaintiff's marital status.  And in fact have used the marriage dissolution between the plaintiff and his ex-wife to deny the plaintiff's rights to protect his home against of [*sic*] all forms of statutory theft."  [Dkt. 10, ¶ 116].  These allegations do not even clearly identify the alleged co-conspirators. It appears that the Defendant and potentially the Plaintiff's ex-wife and the Defendant's employees are the conspirators, but the pleading is not clear.  The Complaint also fails to allege any explicit or tacit agreement between the alleged

51

conspirators to achieve some unlawful end.  Finally, without detailing the nature of the conspiracy, it is impossible for this Court to determine if the Plaintiff has alleged the commission of overt acts in furtherance of that conspiracy.  These conclusory allegations are insufficient to overcome a motion to dismiss.  *See White v. St. Joseph's Hosp.*, No. 08-2876, 369 F. App'x 225, 226 (2d Cir. March 10, 2010) (insufficient to allege a conspiracy with merely conclusory, vague, or general allegations of conspiracy to deprive constitutional rights) (citing *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983)).  The § 1985 claim is DISMISSED.

### iv.  § 2000d

Section 2000d provides that "[n]o persons in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  This statute has no relevance to the Plaintiff's claim for discrimination, which is only based on marital status.  The § 2000d claim is DISMISSED.

### v.  FHA

Finally, the Plaintiff alleges violations of the FHA.  The FHA makes it unlawful "for any person or other entity whose business included engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or

52

national origin."  42 U.S.C. § 3605.  Familial status is defined in the implementing

regulations as a parent, legal custodian, or designee of such person having one

or more children under the age of eighteen domiciled with them.  24 C.F.R. §

100.20.  Here, the Plaintiff has only alleged that he was discriminated against

because of his marital status, not on the basis of any protected class under the

FHA.  Accordingly, the Plaintiff has failed to sufficiently allege a cause of action

in Count XV under any of the statutes cited in the Complaint.  This Count is

DISMISSED.

###### O.  Breach of Contract

The Plaintiff does not specifically allege a count for breach of contract.

However, in construing the Complaint liberally, "to raise the strongest arguments

that [it] suggest[s],'" *Kevilly*, 410 F. App'x at 374 (quoting *Brownell*, 446 F.3d at

310), the Court considers the factual allegations made in the Complaint in Counts

I, II, III, and VI, and the arguments made by the Defendant in its motion to dismiss,

and holds that the Plaintiff has, through its factual allegations, attempted to plead

a claim for breach of contract.  "The elements of a breach of contract claim are

the formation of an agreement, performance by one party, breach of the

agreement by the other party, and damages."  *Meyers v. Livingston, Adler, Pulda,*

*Meiklejohn and Kelly, P.C.*, 311 Conn. 282 (2014) (citations and internal quotation

marks omitted).  Here, the Plaintiff alleges that he received a notice on September

5, 2012 clearly delineating the terms of an offer by Wells Fargo related to

payments for his escrow balance.  The Plaintiff accepted this offer by submitting

a lump sum payment, which triggered certain contractual obligations for the Defendant.  The Defendant, however, failed to perform those obligations, including lowering the monthly mortgage rate, and caused the Plaintiff damages. This appears sufficient to plead a *prima facie* case for breach of contract. Moreover, the Defendant specifically admits that several of the *pro se* Plaintiff's causes of action relate to a breach of contract, not to the labels given in the Complaint.  [*See* Dkt. 28, p. 8 (discussing Counts I and II, "[m]ere allegations of a breach of contract are insufficient to support a claim for fraud; p. 23 discussing VI, "Plaintiff's suit is premised on Wells Fargo's purported breach of a contract to apply Plaintiff's funds for a particular purpose, and thus cannot form the basis of a conversion claim.")].

Accordingly, the Court construes the Complaint as alleging a breach of contract claim.  Since the Defendant has not yet had an opportunity to file a motion to dismiss as to this claim, the Court will permit the Defendant to file a subsequent motion to dismiss on this issue within twenty-eight (28) days of this order.

V.    Conclusion

For the foregoing reasons, the Defendant's [Dkt. 27] Motion to Dismiss is GRANTED in part and DENIED in part.  The Plaintiff's claim in Count XIV based on 12 U.S.C. § 2605(e) is sufficiently pled and the Defendant's motion is denied as to it.  The Court also construes the Complaint to allege a breach of contract claim against the Defendant.  The Defendant has twenty-eight (28) days from the date of

this order to file a motion to dismiss on this issue.  Given the liberal construction of the pleadings, the fact that the Plaintiff has had the opportunity to amend his Complaint once already, the sheer number of claims filed by the Plaintiff and the lack of potential facts to support those claims, the Court views further amendment as "futile" and grants the motion to dismiss in part without granting the Plaintiff right to replead.  *Basile*, 538 F. App'x at 8 (citing *Cuoco*, 222 F.3d at 112).

Furthermore, the Plaintiff and Defendant requested a settlement conference before Magistrate Judge Smith in the hearing held on 4/21/2014.  [Dkt. 67, 111:17-112:12].  As of the date of this order, the parties have not contacted Judge Smith's chambers to request the conference.  The parties are ordered to contact his chambers within fourteen (14) days of this order to arrange such a conference or file a notice on the docket explaining why the parties no longer wish to engage in settlement discussions.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: August 14, 2014