UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHENOL CLAUDE,                          :
     Plaintiff,                        :          CIVIL ACTION NO.
                         :          3:13-cv-00535 (VLB)
     v.                                :
                         :
WELLS FARGO Bank, N.A.                   :          September 29, 2015
     Defendant.                        :

MEMORANDUM OF DECISION
DENYING DEFENDANT'S SECOND MOTION TO DISMISS [Dkt. 93]

I.    **Introduction and Procedural Background**

       The *pro se* Plaintiff, Phenol Claude ("Claude" or "Plaintiff"), a Connecticut resident, brings this action against Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant").[1]  In his First Amended Complaint dated August 2, 2013, Plaintiff asserted fifteen counts for fraud; mail fraud; unfair debt collection; civil conspiracy; violations of RICO, 18 U.S.C. § 1961, *et seq.*; statutory theft and conversion of funds; violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*; violations of Sections 107 and 128 of the Truth in Lending Act, 15

---

[1] Plaintiff brought his First Amended Complaint against Wells Fargo Home Mortgage, Wells Fargo Bank, N.A., "all related insurers and fiduciary bondholders," and "unnamed John Doe 1 and Jane Doe 1." [Dkt. 10.]  However, the First Amended Complaint did not assert any claims against the related insurers and fiduciary bondholders or the unnamed John and Jane Does, and the action was dismissed as to those Defendants.  [Dkt. 85 at p. 3, n.1.]  Moreover, Wells Fargo merged with Wells Fargo Bank, N.A. in May 2004, with the sole surviving entity being Wells Fargo Bank, N.A.  [*Id.* at p. 3.]  Presently, Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.  [*Id.*]  The present action therefore proceeds only against Wells Fargo Bank, N.A. ("Wells Fargo").

U.S.C. §§ 1606 and 1638 ("TILA"), and Sections 226.18(e), (g), and (h) and 226.22 of Regulation Z, 12 C.F.R. Part 226 ("Reg. Z"); malicious abuse of process; intentional infliction of emotional distress; trespass; failure to provide accurate TILA disclosures in the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, *et seq.* ("RESPA"); violations of the disclosure requirements in the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA"); predatory lending practice, in violation of ECOA, Connecticut TILA, TILA and Reg. Z, and RESPA; escrow shortage disclosure in violation of RESPA, 15 U.S.C. § 1691, *et seq.* 12 U.S.C. § 2605(e)(k), TILA §§ 1606 and 1638, and Reg. Z § 226.18(e), (g), and (h) and 226.22; and constitutional rights violations pursuant to 42 U.S.C. §1981(a), 1983, 1985, 2000d, *et seq.*, and the Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA").

Defendant moved to dismiss the First Amended Complaint in its entirety [Dkt. 27] and on August 14, 2014, this Court granted that motion in part and denied it in part, dismissing all of Plaintiff's claims except for Plaintiff's RESPA claim under § 2605, and construing an additional claim for breach of contract. [Dkt. 85 at pp. 42–45; 53–54.]  The Court permitted Defendant to file a second motion to dismiss the newly construed claim, which Defendant submitted on October 14, 2014.  [Dkt. 93.]  Plaintiff did not file an opposition to this Motion.

II.   <u>Factual Background</u>

The Court assumes the parties' familiarity with the alleged facts from Defendant's first Motion to Dismiss, and for purposes of brevity will only review the relevant allegations here.  The following facts are taken from the Plaintiff's

First Amended Complaint, and are deemed to be true for purposes of Defendant's Second Motion to Dismiss.  [Dkt. 10.]

The Plaintiff is a citizen of Connecticut, residing at 43 Tarragon Drive, East Hampton, Connecticut.  [*Id.* at ¶ 1.]  The Defendant Wells Fargo N.A. is headquartered in San Francisco, California, and is a California corporation licensed to do business in Connecticut.  [*Id.* at ¶ 2.]  Plaintiff alleges that on or around September 5, 2012, he received a letter from Wells Fargo regarding the property located at 43 Tarragon Drive in East Hampton, asserting that an escrow shortage balance needed to be remedied.  [Dkt. 10, ¶ 5.]  The terms of Claude's mortgage required him to maintain an escrow account with funds sufficient for the bank to pay Claude's real estate taxes and homeowner's insurance.  [*Id.*]  The September letter informed Claude that his taxes and/or homeowner's insurance premium had increased, rendering his tax and insurance escrow deficient. [*Id.*] Wells Fargo gave the Plaintiff two options for remedying this deficit: he could either pay the balance in a lump sum payment before November 1, 2012, and the monthly mortgage payment would be reduced by a specific amount listed in the notice, or pay the deficiency over 36 months.  [*Id.*]  Under the latter option, Claude's monthly mortgage payment would be increased by the amount of the difference divided by 36.  [*Id.*]  To prevent the automatic monthly mortgage payment increase, the Plaintiff made a financial hardship withdrawal through his 401k retirement account and submitted a lump sum payment to Wells Fargo in satisfaction of the shortage.  [*Id.* at ¶ 6.]

On or around October 23, 2012, Wells Fargo received and cashed the check it received from the Plaintiff to pay the escrow shortage.  [*Id.* at ¶ 9.]  In November 2012, the first month that would require the new lower payment, the Plaintiff paid the lower mortgage amount specified in the September notice, and Wells Fargo received and cashed that check.  [*Id.* at ¶ 10.]  However, the Plaintiff alleges that Wells Fargo refused to honor the terms of the September 5, 2012 notice by refusing to accept the lower mortgage payment rate and, without notice, placed the Plaintiff in delinquent status.  [*Id.* at ¶ 12.]

The Plaintiff claims several types of harm as a result of Defendant's actions.  First, Plaintiff alleges that he suffered a severe financial loss in the form of various penalties as a result of his 401k hardship withdrawal.  [*Id.* at ¶ 7.]  He also alleges that the Defendant reported Plaintiff "to all of the credit bureaus of the United States for non-payment even though the plaintiff has not missed a single payment . . . ." [*Id.* at ¶ 15.]  The Plaintiff further alleges that on June 10, 2013, the Defendant reinstated private mortgage insurance on his account in retaliation for the present litigation.  [*Id.* at ¶ 27.]  Plaintiff also alleges that Wells Fargo sent him "threatening" letters, including threats of foreclosure.  [*Id.* at ¶ 16.]  Specifically, Plaintiff alleges that on April 7, 2013, April 10, 2013, and April 15, 2013, Wells Fargo sent the Plaintiff letters demanding payment and stating that if payment was not made, Plaintiff would risk acceleration of the mortgage and potential loss of the property.  [*Id.* at ¶ 50.]  The Plaintiff further alleges that the Defendant obtained or was granted an order by the court either granting or providing the right to proceed to a foreclosure action.  [*Id.* at ¶ 20.]  Plaintiff also

4

alleges that Defendant obtained a quit claim deed from Plaitiff's ex-wife to commence the foreclosure proceeding against him. [*Id.* at ¶ 24.] Moreover, Plaintiff alleges that Wells Fargo sent a surveyor or inspector to his property without his permission to inspect and take photographs of the residence, seemingly to prepare for a foreclosure action or to ensure that the property was properly kept. [*Id.* at ¶ 28.] The First Amended Complaint suggests that the monies paid to this inspector were charged to the Plaintiff. [*Id.* at ¶ 22(d).] The First Amended Complaint also suggests that as a result of the Defendant's failure to credit the Plaintiff's mortgage payments, Plaintiff was unable to accurately report the interest he paid towards his mortgage on his 2012 tax return. [*Id.* at ¶ 22(f).] In addition to the monetary harms Plaintiff alleges, Plaintiff also claims that this dispute has caused him severe emotional distress, humiliation, severe property damage, and physical harm in the form of a sleeping disorder. [*Id.* at ¶ 21.]

## III.   <u>Legal Standard</u>

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. United States*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Fed. R. Civ. P. 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). "Where a complaint pleads facts that

5

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citations and internal quotation marks omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal,* 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal,* 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal,* 556 U.S. at 678 (citations and internal quotation marks omitted).

In general, the Court's review on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or

of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

*Pro se* complaints are held to a less stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also McKewon v. N.Y. State Comm'n on Judicial Conduct*, 377 F. App'x 121, 122 (2d Cir. 2010) ("In the case of a *pro se* complaint, a court must construe the complaint liberally, . . . and should not dismiss it without granting the plaintiff leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (citations and internal quotation marks omitted)).  In fact, pleadings of a *pro se* party should be read "'to raise the strongest arguments that they suggest.'"  *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)). Even after *Iqbal*, which imposed heightened pleading standards for all complaints, *pro se* complaints are still to be liberally construed.  *See Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009).

## IV.   Discussion

As already noted, the Plaintiff's First Amended Complaint did not explicitly include a count for breach of contract.  However, in construing the First Amended Complaint liberally "to raise the strongest arguments that [it] suggest[s],'" *Kevilly*, 410 F. App'x at 374 (quoting *Brownell*, 446 F.3d at 310), the Court determined that the facts alleged by Plaintiff regarding Wells Fargo's September 5, 2012 escrow balance shortage letter were sufficient to establish a *prima facie*

7

case for breach of contract.  [Dkt. 85 at 53.]  Specifically, the Court held that Plaintiff had alleged that he received a notice from Wells Fargo clearly delineating the terms of an offer to alter the payment terms of his escrow balance; that Plaintiff accepted this offer by submitting a lump sum payment, which triggered certain contractual obligations for the Defendant; and that Defendant failed to perform on those obligations, harming Plaintiff as a result.  [*Id.*]  Defendant now moves to dismiss this construed claim on the sole basis that Plaintiff has not alleged any actual damages.  [Dkt. 93-1.]  Defendant argues that "[e]ven if Wells Fargo entered into a contract with Plaintiff through its letter of September 5, 2012 and later breached it, which Wells Fargo denies, Plaintiff still may not maintain a suit for breach of the contract because his allegations clearly do not satisfy the last essential element; resulting damages."  [*Id.* at 7.]

"The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages."  *Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly, P.C.*, 87 A.3d 534, 540 (2014) (citations and internal quotation marks omitted). Contrary to Defendant's assertion, however, under Connecticut law "actual harm is not essential to stating a valid breach of contract claim."  *Connecticut Student Loan Found. v. Enter. Recovery Sys., Inc.*, 3:04-CV-00712 DJS, 2011 WL 1363772, at *3 (D. Conn. Apr. 11, 2011) (citing *News America Marketing in-Store, Inc. v. Marquis,* 862 A.2d 837, 842-843 (2004), *aff'd,* 885 A.2d 758 (2005).  Rather, a plaintiff under Connecticut law may recover nominal damages for breach of contract.  *See Lydall v. Ruschmeyer,* 919 A.2d 421, 448-449 (2007) (plaintiff "could

point to no pecuniary damages" but was nonetheless deemed "entitled to nominal damages of $1 under its breach of contract claim."); *Marquis,* 862 A.2d at 842-843 ("[I]f a party has suffered no demonstrable harm . . . that party may be entitled . . . to nominal damages for breach of contract").  Accordingly, Plaintiff here is not required to plead actual damages to survive a motion to dismiss; he need only plead facts which, if true, establish "a breach of a legal duty or the invasion of a legal right."  *Wasko v. Manella*, 865 A.2d 1223, 1230 (Conn. App. 2005).  Put another way, where nominal damages for a breach of contract claim may be awarded, the claim cannot be dismissed for failure to adequately plead actual damages due to breach.  *See, e.g., Lima LS PLC v. PHL Variable Ins. Co.*, No. 3:12-CV-1122 WWE, 2013 WL 3327038, at *10 (D. Conn. July 1, 2013) (noting that where nominal damages could be awarded on a CUTPA claim, the court could determine as a matter of law that plaintiff's claim must be dismissed "for lack of damages").

As stated above, the Court has found, and Defendant does not dispute, that Plaintiff has adequately alleged facts suggesting Wells Fargo breached a contractual duty to Plaintiff by failing to lower his mortgage payment amount in exchange for Plaintiff's lump sum escrow shortage payment.  [Dkt. 85 at 53.]  If Plaintiff can establish this breach at trial, he will be entitled to at least nominal damages, and accordingly his claim cannot be dismissed on the grounds that this breach did not result in any actual losses.

9

For the foregoing reasons, the Defendant's [Dkt. 93] Second Motion to Dismiss is DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 29, 2015